Argued September 7, reversed, petition for rehearing denied
November 16, 1976

## STATE OF OREGON, *Petitioner,*
### *v.*
## JOHN STEPHEN GIRARD, *Respondent.*

555 P2d 445

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for petitioner. With him on the briefs were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*John Henry Hingson III,* Oregon City, argued the cause and filed briefs for respondent.

O'CONNELL, J.

## O'CONNELL, J.

This case is before us on a petition by the state for a review of the decision of the Court of Appeals in *State v. Girard,* 25 Or App 169, 548 P2d 505 (1976).

The facts are fully set forth in that decision. They may be summarized as follows. Because defendant's truck was spotted in the vicinity of the McGahan residence at a time when it had been burglarized, police officers began an investigation of defendant. Officers Congdon and Bradshaw went to defendant's home at 255 Ivy Street in Estacada, and spoke with the defendant and Catherine Clancy. Mrs. Clancy produced a letter from the McGahans which indicated that the McGahans were Mrs. Clancy's landlords and that they were evicting her from the Ivy Street residence. Defendant stated that they had gone to the McGahan residence to resolve the rental problems. However, the letter, mailed from Hawaii, recited that the McGahans would not return from their vacation for another two weeks.

The police officers requested but were denied entry to the home. They informed the occupants that they planned to stake out the house and obtain a search warrant. After calling for the assistance of a surveillance car, they noticed a shadow in the backyard and, upon closer scrutiny, saw defendant carrying a box toward the back fence. After spotting the police, defendant returned to the house with the box. The officers then found a tape recorder and a partially spilled carton near the rear boundary of the yard revealing some silver, china and an afghan blanket.

Officer Congdon then knocked on the back door of the house and heard a male voice say, "Hurry, they are coming." Congdon identified himself, and demanded entry. Receiving no response, the door was forced open. After searching the home, the defendant was found hiding under a bed and was arrested. A struggle followed during which defendant and Mrs. Clancy, armed with a wine bottle and hammer, attacked the

[ 513 ]

officers. Following the affray, defendant escaped through a bedroom window. The officers then searched the house and seized several articles.

Defendant was later taken into custody. He filed a motion to suppress the evidence taken from the Ivy Street residence. The trial court found that the arrest was without probable cause and that no exigent circumstances existed to justify the warrantless seizure of evidence and suppressed the evidence. The Court of Appeals held that the arrest was with probable cause but that the lack of exigent circumstances necessitated the exclusion of the evidence.

■ We agree with the Court of Appeals that the officers had probable cause to effect a valid arrest; however, we disagree with the court's conclusion that there were not exigent circumstances justifying the officers' entry into the residence.

■ We have not previously decided the question of the right of an officer having probable cause to arrest to seek out the accused in a private dwelling and enter to effect a warrantless arrest where no exigent circumstances exist.[1] Even if we assume that entry to effect a warrantless arrest must meet a similar requirement of exigent circumstances as a warrantless search, we are of the opinion that the requirement was met in the present case.[2] Here, the police officers, after knocking,

---

[1] Nor has the U.S. Supreme Court decided the question. *Cf., United States v. Santana,* —— US ——, 96 S Ct 2406, 49 L Ed2d 300 (1976), where the police officers with no warrant, but having probable cause, unsuccessfully attempted to arrest the accused in a public place and had to pursue her into her house to complete the arrest. The court upheld the arrest. *See, State v. Christenson,* 21 Or App 458, 535 P2d 558, 560 (1975).

[2] One of the more recent cases holding that a warrant, consent or emergency is needed prior to entry into a private dwelling in order to arrest a suspect is *People v. Ramey,* 16 Cal3d 263, 127 Cal Rptr 629, 545 P2d 1333, 1341 (1976). There the court held:

"* * * In this context, 'exigent circumstances' means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a subject or destruction of evidence."

For cases requiring either a warrant or exigent circumstances in this

heard the accused say, "Hurry, they are coming." Hearing this, it was reasonable for the officers to assume that the accused was hurrying to conceal evidence of the burglary or that he was about to escape. That the latter assumption is not unreasonable is borne out by the fact that the accused did escape shortly after the police gained entry into the house.

The Court of Appeals took a different view of the matter saying, "We do not find these circumstances so compelling as to justify the state's failure to secure a warrant before searching defendant's residence."[3] It is true that defendant's admonition, "Hurry, they are coming" may not have given the officers reason to enter to prevent evidence from being concealed or destroyed because the burglary evidence was not easily disposable. However, the officers still could have understood the statement to mean, 'Let's get out of here; the officers are coming,' in which case entry would be justified to effect an arrest to avoid escape.

Defendant argued that the two officers could have "surrounded" the house to avoid escape while they waited for reinforcements. That involves a large measure of speculation, depending upon a variety of factors relating to the feasibility of "surrounding" the house or otherwise preventing escape, including the size of the house, the number of exits, the proximity of the house to cover for a person bent on escape, visibility, etc. In the exigencies of the moment, the officers could not reasonably be expected to put fine weights in the scale in weighing the chances of securing the house or of losing their quarry.

context, *see, Dorman v. United States,* 435 F2d 385 (D.C. Cir 1970); *Vance v. North Carolina,* 432 F2d 984 (4th Cir 1970); *United States v. Shye,* 492 F2d 886 (6th Cir 1974); *Salvador v. United States,* 505 F2d 1348 (8th Cir 1974); *United States v. Rodriquez,* 375 F Supp 589 (S.D. Tex 1974); *United States v. Cognato,* 408 F Supp 1000 (D. Conn 1976); *People v. Moreno,* 176 Colo 488, 491 P2d 575 (1975); *State v. Johnson,* 232 NW2d 477 (Iowa 1975); *Commonwealth v. Forde,* 329 NE2d 717 (Mass 1975); *State v. Lasley,* 236 NW2d 604 (Minn 1975); and *Nilson v. State,* 272 Md 179, 321 A2d 301 (1974).

[3] 25 Or App at 174.

■ It is our opinion that the circumstances were exigent, justifying the warrantless entry to effect an arrest. Once the officers were lawfully within the house, they were entitled to seize whatever evidence of the crime was in plain view, including that which the officers saw in the course of pursuing the defendant through the house.

The judgment of the Court of Appeals is reversed. The Court of Appeals is directed to remand the cause to the trial court with directions to permit the state to introduce into evidence those items which were in plain view at the time when they were seized, including the items seized after the officers entered defendant's residence.

Reversed.