Argued and submitted July 15, reversed and remanded for new trial
September 18, 1985

## STATE OF OREGON,
*Respondent,*

*v.*

## VERNON HERMAN ROBERTS,
*Appellant.*

### (72256 D.I.; CA A34830)

706 P2d 564

Steven L. Price, Hillsboro, argued the cause and filed the brief for appellant.

Ann F. Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

YOUNG, J.

## YOUNG, J.

Defendant appeals his conviction for driving while under the influence of intoxicants (DUII). ORS 487.540. He argues that the trial court erred in denying his motion to suppress evidence obtained as a result of a warrantless entry into his residence. We agree and reverse.

Sunday, September 30, 1984, at approximately 2:30 p.m., Deputies Bass and Kayfes received a radio dispatch to check for a drunk driver in a brown Pinto, license plate JTW 806. The deputies found the vehicle off the road behind a guard rail. Kayfes searched the unlocked car and through Motor Vehicle Division records determined that defendant was the last known owner of the vehicle and that he lived at a particular address on SW Franklin Street. Bass was told by a service station attendant that a drunken man had recently walked into the station, indicated that his car was off the road and used the telephone to call a taxi. The taxi company reported that a driver had picked up a passenger at the station at 2:33 p.m. and had dropped him off at the Franklin Street address.

The deputies arrived at the Franklin Street address at 2:58 p.m. They knocked on the door and rang the door bell with no response. The police dispatcher called defendant's phone number. The deputies heard the phone ring, and then it stopped ringing. The dispatcher verified that the phone had been picked up and immediately hung up. The deputies consulted with their sergeant, who advised them to enter the home to check on defendant's condition. They entered the unlocked apartment and announced their presence. They went upstairs to the bedroom and found defendant in bed. Kayfes asked defendant if he was all right and if owned the brown Pinto. Defendant responded yes to both questions. He was then advised of his *Miranda* rights and arrested. He took a breath test which registered a .23 percent blood alcohol content. He admitted that he was drunk.

Defendant filed a pretrial motion to suppress "all evidence including any statements of defendant obtained as a result of the police officers' warrantless entry into the defendant's residence" on the ground that the warrantless entry violated his state and federal guarantees against unreasonable

searches and seizures. Or Const, Art I, § 9; US Const, Amends IV, XIV. The motion was denied.

In order to justify a warrantless entry of a residence to effectuate an arrest, the state must demonstrate both probable cause to arrest and exigent circumstances justifying the entry. *Payton v. New York,* 445 US 573, 590, 100 S Ct 1371, 63 L Ed 2d 639 (1980); *State v. Rubert,* 46 Or App 843, 612 P2d 771 (1980). The officers had probable cause to believe that defendant was driving his car while under the influence of intoxicants and probable cause to believe that defendant was in the apartment. The critical issue is whether the state carried its burden to prove that there were exigent circumstances excusing the failure to obtain a warrant.

■ "Exigent circumstances" involve an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property or to forestall the imminent escape of a subject or the destruction of evidence. *State v. Girard,* 276 Or 511, 514 n 2, 555 P2d 445 (1976); *State v. Parras,* 43 Or App 373, 376, 602 P2d 1125 (1979), *rev den* 288 Or 335 (1980). The state argues that the officers' concern for defendant's health and the need to test for blood alcohol content before the alcohol naturally dissipated justified proceeding without a warrant. We agree with the trial court that there was no evidence of a medical emergency.

Defendant cites *Welsh v. Wisconsin,* 466 US 740, 104 S Ct 2091, 80 L Ed 2d 732 (1984), for the proposition that, under the Fourth Amendment, a warrantless entry into a residence for the purpose of arresting a drunk driver cannot be justified under *any* circumstances by the need to secure evidence of blood alcohol content. The facts in *Welsh* are strikingly similar to the facts in this case. The distinction is the seriousness of the crime. The Supreme Court explained:

> "The State of Wisconsin has chosen to classify the first offense for driving while intoxicated as a non-criminal civil forfeiture offense for which no imprisonment is possible. * * * Given this expression of the state's interest, a warrantless home arrest cannot be upheld simply because evidence of the petitioner's blood alcohol level might have dissipated while the police obtained a warrant." 466 US at 754, 80 L Ed 2d at 746 (citations omitted).

Oregon law treats drunk driving as a serious criminal offense.

DUII is a Class A misdemeanor. ORS 487.540(3). A first offender may be imprisoned for up to one year. ORS 161.615(1). The United States Supreme Court's holding in *Welsh* is inapposite.

■ Because of the peculiar nature of the DUII offense, defendant's personal condition and, therefore, his person are evidence. In some circumstances, the need to secure that evidence of the crime of DUII—defendant's body—might justify a warrantless entry of a home, *if the state proves that the arresting officers could not have obtained a warrant before the alcohol in the suspect's body dissipated.* We turn to the evidence on that question.

■ The evidence offered by the state in this case consisted of the officers' testimony that obtaining a warrant would have taken an entire day, because the officers had no familiarity with the procedure. Police officers cannot create their own exigencies by failing to familiarize themselves with constitutionally mandated procedures. The court found that the state's evidence as to exigency was in "somewhat of a peculiar mode," because the testifying officer did not really know how long it would take to get a warrant. The court then made the following factual findings:

> "I do have some experience in those sorts of situations and so I kind of in effect know from my own experience as opposed to the evidence that it wouldn't take a day but it would take two to three hours and then the location of a judge and the securing of the warrant would take - some of that can go on during the same time but you have to deliver the papers, he has to sign them, etc. So you're talking something in the area of three to four hours, assuming one of the judges was available at that time * * * and you'd be in the area of six or seven hours from the time of arriving to the arrest * * * and I know that an .08 will dissipate from a person's body in something like four hours * * *."

The court's factual findings are not supported by any evidence in the record.[1] We also note that the court did not consider the availability of a telephonic warrant, ORS 133.545(4); 133.555(3), a procedure which is available when a

---

[1] There is nothing in the record to suggest that the trial court meant to take judicial notice of the time necessary to obtain a warrant, but that would not have been a proper subject for judicial notice in any event. *See* OEC 201(b).

personal application would interfere with the ability of the police to conduct a timely search. *State v. Jordan,* 73 Or App 84, 88 n 2, 697 P2d 1004 (1985).

The officers did not seek a warrant. They offered no credible evidence of the length of time necessary to obtain a warrant. Without any evidence of that time or any evidence concerning the time required to secure the evidence, we will not assume that the officers could not have obtained a warrant within a reasonable time. *See State v. Rubert, supra,* 46 Or App at 847.

■    The state failed to carry its burden to prove exigency. We hold that the entry into defendant's residence to effect an arrest was unreasonable under Article I, section 9. The court erred in failing to suppress the evidence obtained by virtue of the entry.[2]

Reversed and remanded for a new trial.

---

[2] The state also argues that the warrantless entry was justified, because defendant had "little subjective expectation of privacy in his home" and that defendant "consented" to the entry by not telling the officers to leave when they entered his bedroom. The arguments are without merit.