Argued and submitted March 16, 1984, resubmitted In Banc January 16, affirmed October 16, 1985, reconsideration denied January 10, petition for review allowed February 19, 1986 (300 Or 545)
See later issue Oregon Reports

# STATE OF OREGON,
*Respondent,*

*v.*

# JAMES WAYNE KOSTA,
*Appellant.*

(C82-12-38992; CA A28823)

708 P2d 365

David Lawrence Olstad, Portland, argued the cause for appellant. With him on the brief was Leland R. Berger, Portland.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

BUTTLER, J.

**BUTTLER, J.**

Defendant appeals his conviction for possession of cocaine,[1] contending that the trial court erred in denying his motion to suppress evidence, in holding that testimony of police officers was sufficient to uphold the conviction and in refusing to analyze the issues presented by applying state law first. We affirm.

The Portland police received several anonymous telephone calls advising that packages of cocaine were being shipped regularly from San Diego to the Portland area via Federal Express. Some, but not all, of the successive calls added new information. Finally, on December 6, 1982, the anonymous caller stated that a package containing cocaine would be delivered by Federal Express to Portland from San Diego on December 17, 1982, and could be addressed to Tracy Van Horn at 3323 N.E. Elrod Road. Acting on that information, the police went to Federal Express and intercepted a package addressed to John Morino in care of Van Horn at the latter's address. Approximately two hours later they placed it at random among other packages before a dog trained in narcotics detection; the dog alerted to the package. After a search warrant was obtained, the package was opened and was found to contain white powder, which field tests determined to be cocaine.

The package was re-sealed, and the officers, dressed as Federal Express employes, delivered it to Van Horn, who was arrested when he identified himself and stated that he knew what was in the package. He said that the package was not intended for him and agreed to contact the person who was to pick it up and to attempt to deliver it. After a telephone call, defendant arrived alone in his car, took the package from Van Horn, indicated that he knew what it contained, locked it in his trunk and attempted to leave. The officers arrested him, took his keys and opened the locked trunk. Twenty minutes later the package was actually seized from the trunk, from which the officers also seized an alkaloid kit, which can be used to test cocaine.

Following the court's denial of defendant's motion to

---

[1] Defendant was found not guilty of criminal conspiracy.

suppress, he waived a jury and stipulated to the facts presented during the hearing on the motion to suppress, as supplemented by exhibits and stipulations. The court found defendant guilty of possession of a controlled substance.

Defendant's first assignment[2] is that the court erred in failing to grant his motion to suppress evidence. He asserts that he had a legitimate expectation of privacy in the package that was infringed by the searches and seizures that occurred both before and after his arrest, in violation of both the state and federal constitutions. The state conceded at the hearing on the motion that defendant had a legitimate expectation of privacy in the evidence that was obtained from the trunk of his car, but contends that he had no such expectation before the package was delivered to him. The issue, as framed by the parties, is whether defendant had a legitimate expectation of privacy in the package while it was in the possession of Federal Express or Van Horn so that he may challenge all of the evidence obtained before he took possession of it. That issue is posed under both Article I, section 9, of the Oregon Constitution and the federal Fourth Amendment.

Although there is some justification for the parties' assumption that the analysis under both the state and federal constitutional provisions is that enunciated in *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967), *see, e.g., State v. Chinn,* 231 Or 259, 373 P2d 392 (1962); *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982); *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983); *State v. Perry,* 298 Or 21, 688 P2d 827 (1984), the *Katz* analysis has undergone something akin to metamorphosis, culminating in *Oliver v. United States,* 466 US 170, 104 S Ct 1735, 80 L Ed 2d 214 (1984).[3] Accordingly, even if we were to follow the federal analysis in analyzing rights under the Oregon Constitution,[4] we would not start with the issue as it is framed by the parties.

---

[2] Defendant also contends that he is protected by Article I, section 10, of the Oregon Constitution, in that, if he cannot challenge the admission of the evidence in question, he has no remedy for an injury which was done to him. Because we assume that defendant may challenge the admissibility of the evidence, there is no "injury" as claimed.

[3] *Semble: Katz v. United States, supra; Rakas v. Illinois,* 439 US 128, 99 S Ct 421, 58 L Ed 2d 387 (1978); *United States v. Knotts,* 460 US 276, 103 S Ct 1081, 75 L Ed 2d 55 (1983); *Oliver v. United States, supra.*

[4] We are to analyze the Oregon Constitution independently. *State v. Caraher, supra.*

Assuming that defendant had a protectable interest[5] in the package, whether that interest is characterized as one of property or one of privacy, the question is whether the interception of the package at Federal Express was a constitutionally prohibited intrusion into that interest. Defendant contends that the police did not have probable cause to seize the package in the first instance, that the dog sniff constituted a search and that the warrant was invalid, because it was obtained as a result of those unlawful acts.

Defendant recognizes that *United States v. Place,* 462 US 696, 103 S Ct 2637, 77 L Ed 2d 110 (1983), "holds" that a dog sniff under the circumstances here is not a search within the meaning of the Fourth Amendment[6] and that a temporary detention of the package on reasonable suspicion that it contains contraband does not violate that amendment. Accordingly, he concedes defeat under the federal constitution, but contends that we should construe the Oregon Constitution to provide more protection to the individual.

The rationale of *United States v. Place, supra,* is that, because the Fourth Amendment does not prohibit the police from "stopping" a person who they reasonably suspect is about to commit a crime and detaining him for a reasonable time to make reasonable inquiry (*see Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968)), the temporary detention of a package reasonably suspected to contain contraband for a reasonable time to make further investigation, properly limited in scope, does not violate the owner's Fourth Amendment rights. Oregon has not adopted the *Terry*-stop analysis completely. The legislature, in enacting ORS 131.615, authorized the temporary stop of persons on less than probable cause, but only if the police have a reasonable suspicion that the person

---

[5] The trial court found that defendant was merely a messenger.

[6] The Court, in *United States v. Place, supra,* stated that conclusion after it had held that the detention was for an unreasonable length of time, and it therefore did not decide whether the dog sniff was a search. In *United States v. Beale,* 731 F2d 590 (9th Cir 1983), *cert den* ____ US ____, 105 S Ct 1565 (1984), decided on remand for reconsideration in the light of *Place,* the court properly treated the Supreme Court's statement as *dicta,* and adhered to its original opinion, 674 F2d 1327, that a dog sniff is a search if it is conducted without an articulable suspicion. The court held on remand that, if the article is temporarily detained on reasonable suspicion, no additional suspicion is necessary to justify exposing it to the sniffer.

*has committed* a crime. *See State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977).

Although the Oregon Legislature has indicated its intention to provide more protection to persons than the United States Supreme Court would provide under the federal constitution, the difference between *Terry* and ORS 131.615 is not material to the analogy utilized by the court in *Place.* Certainly, the temporary "stop" or seizure of a person pursuant to *Terry* or ORS 131.615 on less than probable cause is more intrusive than is the temporary detention of property for further investigation and to assure its availability in the event that a search warrant is issued. *See State v. Lowry,* 295 Or at 347.

■ We agree with defendant that the officers did not have probable cause to seize the package at Federal Express. The anonymous telephone calls were insufficient to fulfill the requirements of ORS 133.545(3) that the police have facts bearing on the unnamed informant's reliability and on the means by which the information was obtained by the informant. Those calls, culminating in the one that triggered the police action, however, contained sufficient information relating to a particular package to be sent on a particular date to provide the police with "a belief that is reasonable under the totality of the circumstances," ORS 131.605(4), that the package contained contraband. That reasonable suspicion would have permitted the officers to stop a person to whom the package was delivered to make reasonable inquiry. *A fortiori,* assuming the constitutionality of the statute,[7] a temporary detention of the package before its delivery does not violate Article I, section 9, if the detention is for a reasonable time[8] and any further inquiry is limited in intensity and scope to the reasons that aroused the reasonable suspicion.[9] Accordingly, the initial interception of the package at Federal

---

[7] The constitutionality of the statute is not challenged.

[8] Defendant does not contend that the package was detained for an unreasonable time; accordingly, we do not decide that question.

[9] If a stop of a person is limited to a reasonable time and the inquiry is limited to the immediate circumstances that aroused the officers' suspicion, ORS 131.615, it does not amount to a custodial interrogation requiring the advice of rights dictated by *Miranda.*

Express was not an unreasonable seizure within the meaning of the Oregon Constitution.

■ The more difficult question is whether exposing the package to the olfactory senses of a dog trained in detecting contraband constitutes a search[10] within the meaning of Article I, section 9. We note, first, that this is not a case where the police arbitrarily exposed the dog to luggage and packages not reasonably suspected to contain contraband.[11] We also note that the dog sniff could not reveal all of the contents of the package, as would an x-ray machine or the opening of the package. The further investigation was limited in intensity; it was also limited in scope to the presence of narcotics in the package in question, the suspected presence of which was the justification for its detention. Under these limited circumstances, and accepting their analogy to the stop statute, we hold that the intensity and scope of the "further investigation," like that of the reasonable inquiry permitted under ORS 131.615(3) following a valid stop, does not constitute an unreasonable search under Article I, section 9.

■ The warrant that was obtained by telephone after the dog sniff indicating the probable presence of narcotics was supported by probable cause, because the dog had proven to be reliable in detecting narcotics in the past. Accordingly, the search of the package pursuant to the warrant was permissible. After the package was opened and its contents were field tested, the police knew that it contained cocaine. Accordingly, when it was delivered to defendant by Van Horn, the officers

---

[10] For reasons explained *infra*, we need not decide this question. To do so would require us to determine whether Article I, section 9, protects property rights or privacy rights, or both. If only property rights are protected, it is questionable whether permitting a dog to "sniff" a package constitutes a common-law trespass; clearly it would not be a trespass *de bonis asportatis,* and it is doubtful that it would be a trespass *quare clausum fregit.* If privacy rights are protected, it would not matter that there was no physical penetration of the package under the *Katz* analysis. Under *Oliver v. United States, supra,* the analysis would start with a determination of whether the police action was an intrusion into the defendant's security in his effect; if so, no further inquiry is required. If not, a further inquiry is made into whether the defendant had a reasonable expectation of privacy in the effect, using the *Katz* analysis.

We note, however, that, in general, a technological enhancement of the officers' senses to discern something that is not otherwise clearly discernible is an unlawful search. *State v. Blacker,* 52 Or App 1077, 630 P2d 413 (1981); *see State v. Louis,* 296 Or 57, 672 P2d 708 (1983).

[11] If the dog had "alerted" to one of the other packages or pieces of luggage in the pile assembled by the police, the question, which we do not decide, would be presented.

had probable cause to arrest defendant for possession of cocaine, which they did.

Nevertheless, defendant contends that the police had no authority, without a warrant, to open the locked trunk of his automobile in order to seize the package, even though they had seen him put it there. It is true that there were no exigent circumstances, because defendant had been arrested and his car was impounded. There was time to obtain another warrant to search the locked trunk. The purpose of the warrant requirement is to test the officers' probable cause before a magistrate. That requirement had already been met here with respect to the package, for the search of which a warrant had issued. It is difficult to perceive what purpose would be served by judicially testing the officers' probable cause to seize the package after they had obtained a warrant to search it, simply because defendant had put the package in a larger container—his car trunk. There is no doubt that, if defendant had put the package in the passenger compartment, the officers could have seized it incident to his arrest for possession of the package containing cocaine, a felony committed in their presence. Not only did the package relate to the reason for his arrest, it *was* the reason for his arrest, and its seizure was limited in time, scope and intensity. *State v. Caraher, supra; State v. Flores,* 68 Or App 617, 685 P2d 999, *rev den* 298 Or 151 (1984).

■ The justification for opening the trunk immediately after defendant's arrest in order to seize the package that had already been searched pursuant to a warrant, the possession of which justified his arrest, is greater than it was in the searches upheld in *Caraher, Flores,* and *State v. Gordon,* 71 Or App 321, 692 P2d 618 (1984), *rev den* 298 Or 705 (1985), or any of the cases brought to our attention. We find nothing unreasonable in the officers' opening the trunk under these circumstances. Accordingly, the seizure of the package from the locked trunk at the time of defendant's arrest did not violate the Oregon Constitution; neither did it violate the United States Constitution. *United States v. Ross,* 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982).

■ Because the officers had the right to open the trunk in order to seize the package, they also had the right to seize the alkaloid kit that was in plain view in a place where the

officers had a right to be—not to search, but to seize. They were not required to close their eyes. There was no error in admitting that evidence under the Oregon Constitution. Neither was there error in admitting it under the federal constitution. *United States v. Ross, supra,* permits a search under these circumstances.

■■ Defendant's second assignment is that the evidence as a whole was insufficient to support his conviction, because the police officers who delivered the cocaine to Van Horn were "accomplices" within the definition of ORS 136.440(1), which provides that a conviction cannot be had on the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the crime. It is well-settled that a "feigned accomplice," *i.e.,* one who is engaged in gathering evidence for the prosecution of crime, is not considered an accomplice whose testimony must be corroborated. *State v. Wheelhouse,* 6 Or App 151, 153, 486 P2d 1292 (1971); *State v. Busick,* 90 Or 466, 471-75, 177 P 64 (1919). The evidence was sufficient to sustain defendant's conviction for possession of cocaine.

■ Defendant's final assignment is that the trial court erred in discussing federal law before state law, in alleged violation of the Supreme Court mandate of *State v. Greene,* 285 Or 337, 591 P2d 1362, 1368 (1979). An error, if any, in the order in which the trial court discusses the law, as opposed to an error of law, is not prejudicial.

Affirmed.