Argued and submitted July 28, vacated and remanded for reconsideration
September 8, 2011

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

CESAR MARTINEZ-ALVAREZ,
aka Cesar Alvarez Martinez,
*Defendant-Respondent.*

Clatsop County Circuit Court
097093; A144728

263 P3d 1091

Joanna L. Jenkins, Assistant Attorney General, argued the cause for appellant. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

David O. Ferry, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Sercombe, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

In this prosecution for driving under the influence of intoxicants (DUII), ORS 813.010, the state appeals a pretrial order granting, in part, defendant's motion to suppress evidence of the results of his breath test, ORS 138.060(1)(c). The trial court's order suppressing the evidence was predicated on our decision in *State v. Machuca*, 231 Or App 232, 218 P3d 145 (2009) (*Machuca I*), which the Supreme Court subsequently reversed, *State v. Machuca*, 347 Or 644, 227 P3d 729 (2010) (*Machuca II*). On appeal, the dispositive legal issue is whether, under the principles expressed in *Machuca II*, this a "rare case" in which a warrantless breath test is unconstitutional. 347 Or at 657. In light of the Supreme Court's intervening decision in *Machuca II*, we vacate the trial court's suppression order and remand for reconsideration in light of the operative principles announced in that case.

We are bound by the trial court's findings of historical fact if there is sufficient evidence in the record to support those findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If there are pertinent issues about which the trial court did not render findings, and there is conflicting evidence in the record, we will presume that the trial court resolved those conflicts in the evidence consistently with its ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). We state the facts consistently with that standard.

On April 21, 2009, at 11:00 p.m., Trooper Rzewnicki of the Oregon State Police stopped defendant for a traffic violation. During the encounter, Rzewnicki came to believe that defendant was under the influence of intoxicants. Rzewnicki asked defendant if he would perform field sobriety tests. After defendant performed and failed those tests, Rzewnicki arrested defendant for DUII. However, Rzewnicki did not immediately transport defendant to the Clatsop County Jail. Instead, he waited for a tow truck to arrive, which, according to Rzewnicki, sometimes "takes * * * awhile."

Although Rzewnicki testified that nothing prevented him from working on the narrative for a search warrant while he waited for the tow truck, Rzewnicki apparently did not consider applying for a telephonic warrant during

that time. In fact, Rzewnicki was unaware of how long it would have taken to obtain a telephonic warrant, but he estimated that it might take as little as 30 minutes if a "judge were available right away." Relatedly, although Rzewnicki knew that alcohol dissipates from the body over time, he indicated that he would not be concerned about the loss of evidence for several hours. Ultimately, Rzewnicki transported defendant to the county jail shortly after midnight—approximately one hour after the initial stop.

Rzewnicki and defendant arrived at the jail a few minutes later. Thereafter, at approximately 12:14 a.m., Rzewnicki began the 15-minute observation period that is required before the administration of the breath test. At the conclusion of the observation period, at approximately 12:31 a.m., Rzewnicki administered the test. The test indicated that defendant had blood alcohol content exceeding the legal limit.

Defendant moved to suppress the results of the breath test under the state and federal constitutions.[1] At the hearing concerning the motion, the parties' competing contentions concerned the application of the principles explained in *Machuca I*, which we had decided only a few months earlier. As pertinent to this case, in *Machuca I*, we held that, in order for the state to prove that exigent circumstances justified obtaining a blood sample from a DUII suspect without a warrant, the state must demonstrate, in part, that a warrant could not be obtained without sacrificing the evidence. 231 Or App at 246-47.

Consistently with that principle, in determining whether exigent circumstances justified the warrantless search in this case, the trial court reasoned:

"An hour and 31 minutes elapsed from Trooper Rzewnicki's first contact with defendant to the first blow. The stop was at 11, it takes 8 minutes to reach the jail, and there was a 15-minute observation period at the jail. *More than one*

---

[1] Defendant also moved to suppress the results of the field sobriety tests as well as any evidence derived from those tests. In its order, the trial court denied defendant's motion to suppress the results of the field sobriety tests. That ruling is not at issue on appeal.

*hour is unaccounted for, during which the officer could have applied for and received a warrant.*

"The potential destruction of evidence may justify a warrantless search 'if the state proves that the arresting officers could not have obtained a warrant before the alcohol in the suspect's body dissipated.' *State v. Roberts*, 75 Or App 292, 296[, 706 P2d 564] (1985). In this case, the officer did not consider applying for a telephonic search warrant, and there is no evidence that the alcohol would have dissipated before a warrant could be obtained. *See State v. Kruse*, 220 Or [App] 38[, 184 P3d 1182] (2008). The state has failed to meet its burden to prove exigent circumstances[.]"

(Emphasis added.) Accordingly, the trial court granted defendant's motion to suppress the results of the breath test.

Two days before the state filed its appeal from the trial court's resulting order, the Supreme Court decided *Machuca II*, which, as previously noted, reversed our decision in *Machuca I*. In sum, the Supreme Court disavowed the principle underlying our decision in *Machuca I* and the trial court's ruling in this case—that is, that the state was required to prove that it could not obtain a warrant without sacrificing the evidence. According to the Supreme Court, as applied, that test had "shifted [the] focus away from the blood alcohol exigency itself and onto the speed with which a warrant presumably could have issued in a particular case." *Machuca II*, 347 Or at 656.

Instead, in *Machuca II*, the court reasoned that, "when probable cause to arrest for a crime involving the blood alcohol content of the suspect is combined with the undisputed evanescent nature of alcohol in the blood, those facts are a sufficient basis to conclude that a warrant could not have been obtained without sacrificing that evidence." 347 Or at 656. Although the court noted that "[i]t may be true, phenomenologically, that, among such cases, there will be instances in which a warrant could have been both obtained and executed in a timely fashion[,]" it explained that "[t]he mere possibility * * * that such situations may occur from time to time does not justify ignoring the inescapable fact that, in every such case, evidence is disappearing and minutes count." *Id.* at 656-57. Ultimately, the court held that, "for purposes of the Oregon Constitution, the evanescent

nature of a suspect's blood alcohol content is an exigent circumstance that will ordinarily permit a warrantless blood draw of the kind taken here." *Id.* at 657.

However, the court noted that there may be a "rare case" in which a warrant is required. *Id.* Specifically, the court explained:

"We * * * understand[ ] that particular facts may show, in the rare case, that a warrant could have been obtained and executed *significantly* faster than the actual process otherwise used under the circumstances. We anticipate that only in those rare cases will a warrantless blood draw be unconstitutional."

*Id.* at 657 (emphasis in original).

We return to this appeal. In general, the parties' competing contentions on appeal concern the propriety of the trial court's ruling, given the operative principles of *Machuca II*. More particularly, the parties' contentions focus on whether this case constitutes a "rare case" under *Machuca II* such that the warrantless breath test was unconstitutional.

For its part, the state contends that, under *Machuca II*, the trial court erred in suppressing the results of defendant's breath test "because the evidence was lawfully seized based on probable cause and exigent circumstances." As the state notes,

"[i]n this case, the officer had probable cause to believe that defendant had committed the crime of driving under the influence of alcohol. Evidence of defendant's blood alcohol content was dissipating with each passing minute. The officer conducted an appropriate and efficient investigation in this DUII case. *Machuca [II]* establishes that the officer lawfully was entitled to seize the breath test evidence without a warrant, based on probable cause and exigent circumstances."

Moreover, the state contends that the circumstances of this case do not come within the scope of the "rare case" described in *Machuca II*:

"Certainly, this is not a 'rare' case where the exception to the warrant requirement would not apply. The officer conducted an appropriate investigation in this typical

DUI[I] case. The total time that elapsed from when the officer first developed probable cause at the roadside until the completion of the breath test was approximately an hour and twenty minutes, including the administration of field sobriety tests, waiting for the tow, travel time, and the administration of the breath test. The officer proceeded directly from the roadside to the jail and began the administration of the test. Stopping that process to obtain a warrant would only have delayed the administration of the breath test and thus, the seizure of the evidence."

Conversely, defendant urges us to affirm the trial court's ruling under the principles described in *Machuca II*. Specifically, defendant contends:

"In a driving under the influence of intoxicants prosecution, the state establishes an exception to the warrant requirement when an officer has probable cause that the person drove under the influence of alcoholic liquor, and the dissipation of alcohol in the blood creates an exigency.

"However, the warrant requirement still applies to driving under the influence of intoxicants investigations. And the exigent circumstance exception does not apply when the record affirmatively establishes that the state could have obtained a warrant to seize and search a blood or breath sample *without losing any evidence of a suspect's blood alcohol level.*

"Here, the trial court found that it would not have taken the officer additional time to obtain a warrant. In other words, exigent circumstances did not exist because the officer could have obtained a warrant to seize and search defendant's breath sample without losing any evidence of * * * his blood alcohol level."

(Citation omitted; emphasis in original.)

As framed by the parties' contentions, the dispositive issue here is whether, despite the existence of probable cause and the evanescent nature of alcohol, this is a "rare case"—that is, a case in which the particular facts demonstrate that "a warrant could have been obtained and executed *significantly* faster than the actual process otherwise used under the circumstances." *Machuca II*, 347 Or at 657 (emphasis in original). Although the Supreme Court did not provide much guidance as to the application of that standard,

our understanding of what constitutes a "rare case" is informed by two basic principles that underscored the Supreme Court's reasoning and holding in *Machuca II*: (1) The actual loss of blood alcohol content by virtue of the passage of time creates an exigency; and (2) generally, the time that it takes to obtain a warrant results in the dissipation of blood alcohol content.

In light of those concerns, we conclude that, whatever else a "rare case" may mean—and we do not purport to define the extremely limited universe of "rare cases"—it necessarily includes a case in which an objectively reasonable officer would have understood *at the time of the DUII stop and arrest* that a warrant could have been obtained significantly more quickly than the actual time (and consequent dissipation of alcohol) between the probable cause determination and the administration of the breath test or blood draw. Our emphasis is quite conscious: The standard is not one of "20/20 hindsight"—rather, it is predicated on an officer's contemporaneous perspective based on information known or reasonably discernible in the totality of the circumstances of the particular encounter.

The following hypothetical is illustrative: An officer stops and arrests a motorist for DUII on a highway in a remote area of central or eastern Oregon, miles from the nearest town (and tow truck). The officer cannot transport the suspect to the stationhouse for a breath test until the tow truck arrives to remove the suspect's vehicle—which will take well over an hour. So it will take at least two hours before the breath test can be administered. Although the officer may be engaged during some of that time (*e.g.*, inventorying the vehicle), there will be a significant amount of time that the officer is not otherwise engaged and is simply waiting for the tow truck. Assume further that the record establishes that a reasonably objective officer knows that he or she can generally obtain a telephonic warrant in 30 minutes and that, thus, in the hypothetical circumstance, the warrant would be waiting by the time that the officer and suspect arrive at the stationhouse. Under such circumstances, the "rare case" exception would apply.

With those principles in mind, we turn to their application in the context of this case. Here, the trial court made two findings that, at first blush, appear to indicate that this is a "rare case" of the sort posited in the hypothetical. First, the court found that "[m]ore than one hour is unaccounted for, during which the officer could have applied for and received a warrant."[2] Second, the court found that "there is no evidence that the alcohol would have dissipated before a warrant could be obtained."[3] However, in rendering those findings the trial court was operating within the framework dictated by our exigency analysis in *Machuca I*—*viz.*, that it was incumbent on the state to prove that it could not obtain a warrant without sacrificing blood alcohol evidence—which the Supreme Court disavowed in *Machuca II*. The trial court did not have the benefit of *Machuca II* and, with that guidance, might well have rendered different or additional findings.

We thus conclude that a remand for reconsideration of defendant's motion to suppress is required. Unlike in a number of other appeals by the state from suppression orders rendered in the interim between *Machuca I* and *Machuca II* in which we have rendered unqualified reversals because *Machuca II* indisputably precludes suppression, the circumstances here are less clear, including with reference to defendant's present contention that this case falls within the "rare case" exception. Accordingly, we remand for reconsideration of the suppression motion in light of *Machuca II*.

Vacated and remanded for reconsideration.

---

[2] In remanding, we note for the court's consideration that, in determining that Rzewnicki had not accounted for more than one hour of time, our understanding is that the court measured the duration of the encounter from the time of the traffic stop to the time that the breath test began and failed to account for the time that Rzewnicki testified that it took him to develop probable cause and the time thereafter that it took Rzewnicki to administer the field sobriety tests, which was not established in this record.

[3] We reject defendant's contention that this finding necessarily reflects the court's determination that "it would not have taken the officer additional time to obtain a warrant." That is so, because under the then-extant principles, the court was not required to make such a determination.