Argued and submitted October 31, 2003, reversed January 21, 2004

# STATE OF OREGON,
*Respondent,*

*v.*

# SEAN J. DIXON,
*Appellant.*

# 01CR0021; A114904

83 P3d 385

Rebecca Duncan, Deputy Public Defender, argued the cause for appellant. With her on the brief was David Groom, Acting Executive Director, Office of Public Defense Services.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

LINDER, J.

**LINDER, J.**

Following a jury trial, defendant was convicted of endangering the welfare of a minor by permitting "a person under 18 years of age to enter or remain in a place where unlawful activity involving controlled substances is maintained or conducted," ORS 163.575(1)(b). The principal issue on appeal is whether, to commit that offense, a defendant must know that the endangered person is a minor. We conclude that the offense requires such knowledge and, further, that there was insufficient evidence in this case for a jury to find that defendant acted with that knowledge. We therefore reverse.

We describe additional facts in greater detail later in this opinion. Briefly, however, the charge against defendant arose as a result of activities that defendant engaged in with R, a minor, whom defendant agreed to drive home from a coworker's house. It was late at night and, while en route to R's home, defendant stopped his car in a closed city park and the two smoked marijuana while parked there. Police approached the car and questioned defendant, who admitted to smoking marijuana with R. When police discovered that R was 17 years old, they arrested defendant. Defendant subsequently was charged with endangering the welfare of a minor.

At trial, after the state presented its case-in-chief, defendant moved for judgment of acquittal. In support of that motion, defendant argued that the state was required to prove that defendant knew that R was under age 18 and that the evidence was insufficient to permit the jury to so find. The trial court disagreed that knowledge of the minor's age was an element of the offense. The trial court therefore denied the motion. Later, during the jury's deliberations, the jury directed a question to the trial court asking, in effect, if it should find defendant not guilty if it believed that defendant did not know R's age. After the trial court instructed the jury that the state was not required to prove that defendant knew that R was under 18 years of age, the jury returned a verdict of guilty. On appeal, defendant assigns error both to the trial court's denial of his motion for judgment of acquittal and to

the jury instruction advising the jury that the state did not have to prove that defendant knew that R was a minor.

■ The issues, as framed on appeal, therefore require a two-step inquiry. The first question is whether the crime of endangering the welfare of a minor requires a defendant's knowledge of the minor's age. If it does not, then the trial court's ruling on the motion for judgment of acquittal and its instruction to the jury were both correct. If, however, knowledge of the minor's age is an element of the offense, the second question is whether the evidence in this record would permit a rational jury to conclude that defendant was aware of R's age. If so, defendant is entitled only to a reversal and a remand for retrial. Conversely, if the evidence is insufficient, defendant is entitled to an outright reversal. *State v. Howley*, 94 Or App 3, 4, 764 P2d 233 (1988) (granting "a new trial after a judgment of acquittal for lack of evidence violates the principles of former jeopardy, whether the judgment of acquittal is rendered pursuant to a jury verdict or by the order of an appellate court").

On the legal question of whether the offense requires a defendant's knowledge of an endangered minor's age, *State v. Schodrow*, 187 Or App 224, 66 P3d 547 (2003), is closely analogous and essentially controlling. In *Schodrow*, the defendant was charged with violating ORS 166.250, which provides, in part:

"(1) Except as otherwise provided in [specific statutes], a person commits the crime of unlawful possession of a firearm if the person knowingly:

"(a) Carries any firearm concealed upon the person[.]"

The issue in *Schodrow* was whether the state was required to prove not only that a defendant charged with unlawful possession of a firearm knew that he or she was carrying an object, but also that the person knew that the object being carried was a firearm—that is, that the object had the characteristics or qualities that cause it to be a firearm within the meaning of the statute. 187 Or App at 228.

In resolving that issue, we first observed that, because the prescribed culpable mental state in the statute, "knowingly," immediately precedes and directly modifies the

prohibited act of carrying any firearm, the knowledge element plainly extends to the act of carrying something. *Id.* at 229. Less clear was "how far down the sentence the word 'knowingly' [was] intended to travel" and thus whether it also modifies the thing being carried—*i.e.*, any firearm. *Id.* at 230 (quoting Wayne R. LaFave and Austin W. Scott, Jr., *Criminal Law* § 27, 193 (hornbook series 1972)). But that ambiguity in the statute disappeared by considering it together with the applicable definition of "knowingly" in ORS 161.085(8), which defines the term to mean that "a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists." *Schodrow*, 187 Or App at 230 (internal quotation and emphasis omitted). We therefore held:

> "By force of that definition, to knowingly 'carry a firearm' requires more than the person's awareness that he or she is engaged in the conduct of carrying an object of some or any kind. Instead, either because carrying 'a firearm' is an aspect of the nature of the conduct or a circumstance described by the statute, a person must also be aware that the object he or she is carrying is a firearm. That awareness requires, in turn, knowledge that the weapon has the characteristics of a firearm—namely, as relevant to defendant's challenge, that it is readily capable of use as a weapon."

*Id.*

The statute defining the offense of endangering the welfare of a minor is similar in structure to the statute in *Schodrow*. Specifically, as pertinent here, ORS 163.575(1) provides, in part:

> "A person commits the crime of endangering the welfare of a minor if the person knowingly:
>
> "* * * * *
>
> "(b)    Permits a person under 18 years of age to enter or remain in a place where unlawful activity involving controlled substances is maintained or conducted[.]"

The prescribed mental state, "knowingly," immediately precedes and directly modifies the prohibited act of permitting a minor to enter or remain in a place where there is unlawful drug activity. The applicable definition of "knowingly" in

ORS 161.085(8) requires that a person act "with an aware-
ness that the conduct of the person is of a nature so described
or that a circumstance so described exists." Here, the under-
age status of the person whom a defendant permits to enter
or remain in a place where there is drug activity is a neces-
sary circumstance of the offense. Consequently, a defendant
charged with a violation of ORS 163.575(1)(b) must not only
knowingly permit someone who happens to be a minor to
remain in a place where there is drug activity, but he or she
must also do so with the knowledge that the person is a
minor.

■       The trial court, therefore, erred as a matter of law in
concluding the contrary. Specifically, the trial court erred in
instructing the jury that the state did not have to prove that
defendant knew that R was under 18 years of age and in
denying the motion for judgment of acquittal insofar as it
tested the legal elements of the offense.[1] But defendant's
motion for judgment of acquittal also tested the sufficiency of
the evidence in that regard. To determine whether defendant
is entitled to outright reversal rather than a reversal and a
remand, we turn to a more detailed examination of the rele-
vant evidence on that point. In so doing, we view the evidence
and all reasonable inferences it supports in the light most
favorable to the state. *State v. King*, 307 Or 332, 339, 768 P2d
391 (1989).

The state presented no direct evidence that defen-
dant knew R's age. Rather, the direct evidence was all to the
contrary. Defendant told the arresting officer that he did not
know that R was only 17 years old, and R's testimony tended
to corroborate that. Specifically, according to R, defendant
never asked R how old R was, R never volunteered that infor-
mation to defendant, and R had no reason to think that
defendant was aware of R's age. R acknowledged that the

---

[1] *See State v. Jaha*, 118 Or App 497, 500-01, 848 P2d 622 (1993) (a motion for
judgment of acquittal may be used when the elements of a crime are in dispute; if
the motion tests only the legal elements that the state must prove, and not the suf-
ficiency of the evidence, then the remedy for an erroneously denied motion is a
reversal and remand for new trial); *see also Schodrow*, 187 Or App at 231-32 (a fail-
ure of proof entitles a defendant to an outright reversal, whereas an erroneously
denied motion that disputes only what the state must prove, not the adequacy of
the proof, results in a reversal and a remand for new trial).

coworker who introduced defendant and R knew R's age, but R had no reason to believe that the coworker had informed defendant of that. Nor did defendant make any contrary statements to police at the time of his arrest. In fact, as the officer who arrested defendant acknowledged, defendant specifically denied any knowledge that R was 17 years old. The officer testified at trial that he "found it hard to believe" that defendant did not know R's age, because "it would seem to me that if you were going to do something like that [*i.e.*, smoke marijuana] you would know the person that you were doing it with." The officer further acknowledged, however, that he had no evidence or other reason to believe that defendant knew that R was a minor.

■■    In establishing defendant's knowledge of R's underage status, the state was not limited to direct evidence but was, in addition, entitled to rely on circumstantial evidence and reasonable inferences flowing from that evidence. *See Delgado v. Souders*, 334 Or 122, 135, 46 P3d 729 (2002); *State v. Beason*, 170 Or App 414, 425, 12 P3d 560 (2000), *rev den*, 331 Or 692 (2001). An individual's age can be inferred from a broad range of circumstances, such as the individual's life activities, friends, associates, school status, and appearance. In this case, however, the circumstantial evidence does not support the inference that the state needed the jury to draw. The evidence indicated that R lives with his mother and does not drive, which are circumstances that provide at least some support for an inference that R was a minor. But the rest of the circumstantial evidence, rather than bolstering that suggestion, cuts the other way and suggests that R was 18 years or older. In particular, R was no longer in public school but instead had already obtained his GED and was employed full time. R's social friends, at least insofar as the record establishes, were working adults. Indeed, the coworker who introduced defendant and R was a married adult living with her husband and young children.

Nor do any of the circumstances surrounding the offense itself suggest a basis on which defendant would be aware of R's underage status. Defendant met up with R on the night of the arrest at the coworker's house after R's workday ended at approximately 10:00 p.m. According to the undisputed testimony, R and defendant were not close

friends, but, rather, were mere acquaintances who had met only a few months before. They had no contact with each other except at the coworker's home. Defendant had never before given R a ride home. In short, based on this record, defendant was exposed to nothing in any of R's life activities that would suggest to defendant that R was under age 18. In fact, R's full-time and late-hour work, coupled with his adult friends and social activities, all support a contrary inference.

■ One remaining basis from which a jury might infer that defendant knew R's age would be if R was youthful enough in appearance that anyone seeing him would *know* that he was under 18 years of age. At the time of defendant's arrest, R was 17 years old, and thus the difference in age involved was relatively minimal. As the arresting officer testified, and as common experience would suggest, it is generally difficult to tell the difference between a 17 year old and an 18 year old based on appearance. In this particular case, nothing in the record suggests that R was an exceptionally youthful-looking 17 year old. At most, the arresting officer offered his opinion that, on the day of trial, R looked like a minor. But the officer further acknowledged that he could not say that the same was true at the time of defendant's arrest because the area in which defendant's car was parked was dark, and the officer therefore did not have a good enough view of R to make that observation. Although another officer assisted in the investigation and had more direct contact with R at the scene, that officer was not asked his opinion of R's apparent age at the time of the offense.

Viewing the evidence in the light most favorable to the state, we conclude that a rational jury could not, on the basis of the limited circumstantial evidence in this record, infer beyond a reasonable doubt that defendant knew that R was a minor. *See Delgado*, 334 Or at 135 (whether particular circumstantial evidence is sufficient to support a particular inference is a legal question for a court to decide). Defendant's motion for judgment of acquittal should have been granted.

Reversed.