Submitted February 18, affirmed August 19, petition for review denied
December 9, 2009 (347 Or 365)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DEBORA MORGAN,
aka Deborah C. Morgan,
*Defendant-Appellant.*

Multnomah County Circuit Court
050633749; A133153

215 P3d 120

Patrick M. Ebbett and Chilton, Ebbett & Galli, LLC, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Michael R. Washington, Senior Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

Defendant was convicted of theft in the first degree for her role in stealing copper wire from Portland General Electric (PGE). On appeal, she assigns error to the trial court's denial of her motion to suppress evidence obtained through what she argues was an unlawful search of the motel room where she was living. The trial court ruled that the search was lawful because police officers had probable cause to arrest two people whom they observed loading the copper wire into a car and then entering the room, and that exigent circumstances justified police in entering the motel room to arrest those people. For the reasons that follow, we agree. We therefore affirm.

The following facts are either undisputed or taken from the trial court's findings and supported by constitutionally sufficient evidence. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Portland Police Officer McKinlay responded to a call reporting that two people were loading copper wire into a car parked in front of a motel in Portland. The motel was "somewhat dilapidated" and located in a "high-crime area." McKinlay, wearing a police uniform and driving a marked police car, drove to the motel and saw two people leaning over a car that matched the one that the caller had described. When he got out of his police car and approached them, they immediately turned and walked toward the motel, leaving the car door open. McKinlay yelled at them to stop. One of the people turned and made eye contact with him, but both continued to walk into a motel room, closing the door behind them. In what he presumed to be their car, McKinlay saw a large coil of copper wire stripped of its plastic sheathing and partially covered by a blanket. He also noticed a large amount of plastic sheathing scattered around a dumpster approximately 75 feet away. He testified that, based on his experience with metal theft cases, he knew that people who steal copper wire commonly remove its sheathing to increase its resale value. He therefore believed that the wire was stolen and that he had probable cause to make an arrest.

Two officers arrived to provide back-up. Officer Jeardeau walked to the back of the motel to watch for people trying to escape while McKinlay and the other officer

knocked on the motel room door. Someone opened the door slightly, handed the officers a lawyer's business card, and told them to leave. The officers knocked again, and again someone opened the door slightly. The occupants yelled obscenities at the officers. McKinlay tried to put his foot in the door to keep it open, but someone inside slammed it closed.

At that point, the officers at the door heard Jeardeau yell that somebody was trying to escape through a back window. McKinlay surmised (in his words) that the officers "needed to make entry in order to prevent their escape." The officers kicked down the door. Inside the room, which was registered to defendant, they found a large quantity of copper wire as well as spool, wire strippers, and bolt cutters. Some of the equipment was marked with PGE stamps. One of the officers called PGE and learned that copper wire and bolt cutters had recently been stolen from a PGE lot in Beaverton. The officers arrested all eight people inside the motel room, including defendant.

Defendant was charged with theft in the first degree, ORS 164.057. The trial court, relying primarily on *State v. Wesson*, 40 Or App 99, 594 P2d 429 (1979), denied defendant's motion to suppress evidence derived from what defendant alleged was an unlawful search of the motel room. First, the court concluded that, based on what McKinlay observed outside the motel room, "the officers had reasonable and subjective probable cause to believe that there was a metal theft crime in progress." Second, the court concluded that the officers' warrantless entry into the motel room was justified by exigent circumstances, specifically, "the possibility of escape, which was confirmed when one of the officers who was in the back yelled that there was, in fact, a person * * * trying to escape through the bathroom window." Defendant was then tried by jury and convicted.

■ On appeal, defendant assigns error to the trial court's denial of her motion to suppress, arguing, first, that McKinlay's observations did not give rise to probable cause because he did not know that the wire was stolen and, second, that the officers' warrantless entry into the motel room was not justified by exigent circumstances. The state, in

response, argues that McKinlay had probable cause to arrest the people whom he observed in the parking lot and that the officers' warrantless entry into the motel room was justified to prevent the suspects' escape. Whether the facts supported by constitutionally adequate evidence require granting a motion to suppress is a question of law. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). For the reasons that follow, we agree with the state.

As an initial matter, although we agree with the trial court's ultimate conclusions, we agree with defendant's assertion that the court's reliance on *Wesson* is misplaced. In *Wesson*, officers saw two men standing next to a car that was parked illegally with its doors open, surrounded by stereo equipment; when an officer asked one of the men to stop, he looked at the officer and then walked into a house. 40 Or App at 101. Noting that our case law defined "probable cause" as " 'a well warranted suspicion' justifying a reasonable [person] in the belief that a certain set of facts exists," we concluded that

> "the improper parking of the car with its doors left open, the defendant's presence in the immediate vicinity of the car, the officers' appearance in uniform and in a marked patrol car, and the defendant's retreat from the area despite an officer's request that he halt are facts rising to the level of 'well warranted suspicion.' Having probable cause to arrest, the officer had a right to enter the house to effect the arrest. ORS 133.235(5). Since defendant was aware the officer was after him, the officer had authority to enter the house without a warrant."

*Wesson*, 40 Or App at 103 (citations and footnote omitted).

■ Although the facts in *Wesson* are similar to the facts in the present case, we no longer define "probable cause" as "a well warranted suspicion." *See State v. Verdine*, 290 Or 553, 557, 624 P2d 580 (1981) ("[A] suspicion, no matter how well founded, does not rise to the level of probable cause."). Further, shortly after we decided *Wesson*, the Supreme Court held that probable cause to arrest may justify the issuance of a warrant, but does not in itself justify officers in making a forced entry into a suspect's home. *State v. Olson*, 287 Or 157, 164-65, 598 P2d 670 (1979). Instead, to justify a warrantless

entry into a residence in order to make an arrest, police must demonstrate both probable cause to arrest and exigent circumstances (or some other exception to the warrant requirement) justifying the entry. *Id.*; *State v. Roberts*, 75 Or App 292, 295, 706 P2d 564 (1985). Here, we conclude, both probable cause and exigency existed.

■ A law enforcement officer has probable cause to arrest a person if the officer believes that the person has committed a crime and the officer's belief is objectively reasonable under the circumstances. *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009). In evaluating the objective reasonableness of an officer's belief, we examine the totality of the circumstances, including the officer's training and experience, although such training and experience by itself does not suffice. *State v. Jacobs*, 187 Or App 330, 333, 67 P3d 408 (2003). If, under the totality of the circumstances, we conclude that the officer's belief is reasonable, the arrest is lawfully grounded in probable cause.

■ In the present case, there is no dispute that McKinlay believed that the crime of theft had been committed; the only question is whether that belief was objectively reasonable. The state argues that it was, because (1) a caller reported that people were loading copper wire into a car at a specified location; (2) when McKinlay arrived at the location, he saw two people leaning over a car that matched the one that the caller had described; (3) when McKinlay approached the people as they were walking away from the car and asked them to stop, one turned and made eye contact with him, but both continued into the motel room, closing the door behind them; and (4) McKinlay saw copper wire in the car and wire sheathing in the dumpster, which, based on his specific and relevant experience, he believed was consistent with the crime of metal theft. Defendant, however, argues that McKinlay did not know that the wire was stolen—he only suspected as much—and that that is not enough to give rise to probable cause.

We conclude that McKinlay's belief that the people he saw near the reported car had committed the crime of metal theft was objectively reasonable. It is true that neither a general invocation of his "training and experience," without

more, nor the fact that the suspects did not want to talk to him, would, alone, create probable cause to believe that the suspects had committed a crime. However, we examine the totality of the circumstances. Here, McKinlay testified to direct, relevant experience with metal theft and how it is typically accomplished. The evidence that he saw in plain view was consistent with that crime having been committed by the automobile's occupants. And, while it is conceivable that the facts might have had an innocent explanation, we cannot think of one that is not extremely far-fetched—that is, *im*probable. The trial court therefore properly concluded that McKinlay had probable cause to arrest the people he saw enter defendant's room.

■ ■    We also conclude that there were exigent circumstances. "An exigent circumstance is a situation that requires the police to act swiftly to prevent danger to life or serious damage to property, or to forestall a suspect's escape or the destruction of evidence." *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). In the present case, we agree with the trial court that the officers' entry was justified by exigent circumstances when "one of the officers who was in the back yelled that there was, in fact, a person * * * trying to escape through the bathroom window." We note two important factors that compel this conclusion. First, Jeardeau, who alerted the officers at the front door about the escape attempt, was watching the back of the motel from the other side of a six-foot-high fence enclosing an area at the rear of the motel. From that vantage point, he could see a back window of defendant's room, but if an occupant had fled from that window, and the occupant was more nimble than Jeardeau, Jeardeau could not have detained him without giving chase. Thus, the situation here does not require us to decide, and we do not decide, whether exigent circumstances justifying entrance into a residence exist when police officers are positioned so as to guarantee that no escape is possible. Second, it is true that an occupant did begin to attempt an escape and, seeing Jeardeau, decided not to do so before completing his exit from the window. But the only information that Jeardeau communicated to the officers at the front door—that is, to the officers who actually effected the entry—was that an occupant was attempting to escape. They knew that fact before they

entered and, in fact, McKinlay testified that he had entered *because* he was alerted to an ongoing escape attempt. McKinlay, then, reasonably believed, based on Jeardeau's report, that a suspect was escaping; under such circumstances, Article I, section 9, of the Oregon Constitution, does not require that "police officers wait at the threshold while a suspect flees." *State v. Cota,* 66 Or App 650, 665, 675 P2d 1101, *rev den,* 297 Or 124 (1984) (Rossman, J., dissenting). The officers' entry was justified by probable cause and exigent circumstances.

Affirmed.