Argued and submitted December 28, 2012, reversed and remanded July 24, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MANUEL URUSA ALVARADO,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF080262; A146374

307 P3d 540

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jeremy C. Rice, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant appeals his convictions for unlawful obliteration of the identification number on a firearm, ORS 166.450, and unlawful possession of a firearm, ORS 166.250. The firearm that precipitated these convictions was discovered when police searched defendant's vehicle after stopping him for speeding and for failing to display a front license plate. On appeal, defendant asserts two assignments of error. First, he asserts that the trial court erroneously denied his motion to suppress the evidence obtained from the search of his vehicle. Specifically, he argues that the evidence against him was found after a traffic stop was unlawfully extended without reasonable suspicion. Second, defendant argues that the trial court erroneously denied his motion for a judgment of acquittal on the obliteration charge. According to defendant, his conviction for intentionally obliterating a firearm's identification number was based upon the court's application of an unlawful evidentiary presumption. For the reasons that follow, we conclude that, although the court did not correctly apply the obliteration statute, it properly denied defendant's motion for a judgment of acquittal; however, we also conclude that it erred in denying his motion to suppress. We therefore reverse and remand.

We start by reviewing the denial of defendant's motion for a judgment of acquittal, because an outright reversal on that issue would entitle defendant to greater relief on the obliteration conviction.[1] In reviewing the denial of a motion for a judgment of acquittal, we state the evidence in the light most favorable to the state. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998); *State v. Turley*, 202 Or App 40, 48, 120 P3d 1229 (2005).

On a February afternoon in 2008, Patrol Sergeant Turner of the Oregon State Police was stationed in his cruiser west of Pendleton monitoring traffic traveling eastbound on I-84. Turner saw defendant's van and noted that it was speeding and missing a front license plate. After stopping defendant for those traffic violations, Turner became

---

[1] Defendant does not assign error to the denial of his motion for a judgment of acquittal on the possession of a firearm charge.

suspicious that defendant might have narcotics in his vehicle.[2] Turner radioed for help from an officer with a drug detecting dog, which, upon arrival indicated narcotics were present in the van. The officers then searched the vehicle. They did not find any narcotics, but Turner, leaning into the van, noticed the butt of a pistol sticking out of the top of a bag behind the driver's seat, within reach of the driver. In addition to the pistol, the officers discovered two loaded magazines for the pistol and an unloaded magazine belonging to a different firearm. The serial number on the pistol was scratched off so that it was unreadable. The scratches were consistent with the intentional obliteration of the identification number.

When asked about the gun, defendant first told Turner that he had found it on the side of the road. Upon further questioning, however, defendant changed his story and told Turner that he had purchased the gun for protection. Based on this evidence, defendant was charged with theft of the firearm, ORS 164.015, intentionally obliterating the identification number on a firearm for an unlawful purpose, ORS 166.450, and unlawful possession of a firearm, ORS 166.250. The theft charge was later dismissed on a motion from the state. Defendant waived his right to a jury and was convicted at a trial before the court on the remaining counts.

ORS 166.450 provides:

"Any person who intentionally alters, removes or obliterates the identification number of any firearm for an unlawful purpose, shall be punished upon conviction by imprisonment in the custody of the Department of Corrections for not more than five years. Possession of any such firearm is presumptive evidence that the possessor has altered, removed or obliterated the identification number."

The dispute over the motion for a judgment of acquittal revolves around the second sentence. At trial, the state argued that the sentence creates a presumption that relieves the state of the burden of proving the first two elements. In other words, the state's interpretation of the

---

[2] The causes of Turner's suspicion are the subject of defendant's motion to suppress and will be set out in detail below. 257 Or App 624-31.

statute was that the trier of fact may presume that "the person in possession of a firearm with an obliterated identification number[] intentionally did [the obliterating]." Defendant agrees that the plain language of ORS 166.450 creates a presumption. According to defendant, however, a presumption that operates as the state describes is contrary to both constitutional due process protections and our statutory rules of evidence. The trial court accepted the state's argument and rejected defendant's.

On appeal, defendant cites *State v. Rainey*, 298 Or 459, 693 P2d 635 (1985), OEC 309, and *Sandstrom v. Montana*, 442 US 510, 99 S Ct 2450, 61 L Ed 2d 39 (1979), for the proposition that the state may not use a statutory presumption to evade the requirement that it prove each element of a crime beyond a reasonable doubt. In *Rainey*, the Supreme Court explained:

> "When, on a motion for judgment of acquittal, an inferred fact is used to establish an element of the offense or negate a defense, the jury may be left free to infer that fact only when two requirements are satisfied: (1) sufficient evidence has been offered of the existence of the fact(s) giving rise to the inference to allow a rational factfinder to find the underlying fact(s) beyond a reasonable doubt; and (2) a rational factfinder could find that the inferred fact follows more likely than not from the fact(s) giving rise to the inference. When, however, the inferred fact is the sole basis for finding the existence of an element of the crime, a third restraint comes into play. In order to meet the requirement of proof of each element of the crime beyond a reasonable doubt, the jury must be convinced that the inferred fact follows beyond a reasonable doubt from the underlying fact(s)."

298 Or at 466. The court noted that that restraint on the use of presumptions was "incorporated" in OEC 309, which provides:

> "(1)  The judge is not authorized to direct the jury to find a presumed fact against the accused.
>
> "(2)  When the presumed fact establishes guilt or is an element of the offense or negates a defense, the judge may submit the question of guilt or the existence of the presumed fact to the jury only if:

"(a) A reasonable juror on the evidence as a whole could find that the facts giving rise to the presumed fact have been established beyond a reasonable doubt; and

"(b) The presumed fact follows more likely than not from the facts giving rise to the presumed fact."

OEC 309. The court also observed, "[T]he prosecution may not rely on a rebuttable presumption, because a presumption places the burden of persuasion on the criminal defendant in a manner inconsistent with the presumption of innocence and proof of guilt beyond a reasonable doubt." *Rainey*, 298 Or at 465. *Sandstrom* reaches the same result as a matter of due process: "A presumption which, although not conclusive, had the effect of shifting the burden of persuasion to the defendant, would have suffered from similar infirmities" to those afflicting a conclusive presumption: It would conflict with the "'overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime.'" 442 US at 523-24 (quoting *Morissette v. United States*, 342 US 246, 274-75, 72 S Ct 240, 96 L Ed 288 (1951)).

The state responds by arguing, first, that *Rainey* and OEC 309 apply only to a trial court's instructions to a jury; when the issue is whether a motion for judgment of acquittal should be granted, the standard is "the more familiar one—whether a reasonable trier of fact could find the elements of the crime beyond a reasonable doubt." *State v. Rader*, 348 Or 81, 91 n 6, 228 P3d 552 (2010). The state argues in the alternative that defendant's cited authority is inapposite because the presumption in ORS 166.450 is offense specific. According to the state, the presumption is acceptable because, rather than attempting to establish a material fact or element by using a generally applicable presumption such as those in OEC 311 (for example, "[o]fficial duty has been regularly performed," OEC 311(1)(j) or "[a] person not heard from in seven years is dead," OEC 311(1)(s)), ORS 166.450 merely defines what facts are sufficient to prove the specific offense in ORS 166.450. In other words, the second sentence of ORS 166.450 does not apply a free-standing presumption to an element of the crime; rather, it is part of the definition of the crime itself. Thus, according to the state, the elements of ORS 166.450 are: (1) Defendant

obliterated the numbers on a firearm, or (2) possessed a firearm with an obliterated number, and (3) did so intentionally (4) for an unlawful purpose. In support of this argument, the state notes that the legislature undeniably could enact legislation explicitly prohibiting the possession of a firearm with an obliterated identification number. The state then reasons that what the legislature can do directly, it must also be able to do circuitously by making use of an in-the-statute presumption.

We disagree with parts of both side's arguments. The state's position at trial, as well as the trial court's ruling, rests on the presumption that the "presumptive evidence" sentence relieves the state from introducing evidence of defendant's intent; the intent element is satisfied by proving that defendant possessed the firearm, an undisputed fact. The obvious problem with that argument is that the statute does no such thing. The plain text of the statute applies the presumptive evidence standard, not to the question of whether defendant intended to obliterate the number for an unlawful purpose, but to whether he is the person who did the obliteration: "Possession of any such firearm is presumptive evidence that the possessor has altered, removed or obliterated the identification number." ORS 166.450. Even if the sentence relieved the state from proving anything—which, as we discuss below, it does not—it would not relieve the state from proving intent and unlawful purpose.

The more fundamental problem with the state's argument—and with defendant's as well—is the premise that the second sentence creates a presumption. It does not. It creates "presumptive evidence." At a plain textual level, "evidence," even if modified by "presumptive," is not a presumption. Evidence is anything from which a fact *may be inferred*; a presumption is a mechanism by which one fact is *established* by another.

This textual interpretation is bolstered by legislative history. The origins of ORS 166.450 date back to 1925, when the legislature enacted House Bill 452. That bill contained a number of provisions regulating the "possession, sale and use of pistols and revolvers." Or Laws 1925, ch 260. Section 13 of that bill, which (with subsequent amendments) would become ORS 166.450, provided:

"No person shall change, alter, remove or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. Possession of any such firearm upon which the same shall have been changed, altered, removed or obliterated, shall be presumptive evidence that such possessor has changed, altered, removed or obliterated the same. * * *"

Or Laws 1925, ch 260, § 13. Section 3 of that same bill provided criminal penalties for any person who "shall commit or attempt to commit any felony" while armed with certain specified weapons. Or Laws 1925, ch 260, § 3. That section went on to provide that, when a person who is armed with one of those specified weapons commits, or attempts to commit, a felony against another person, "the fact that he was so armed shall be *prima facie evidence* of his intent to commit such felony." *Id.* (emphasis added).

*Prima facie* evidence is "'that degree of proof which, unexplained or uncontradicted, is alone sufficient to establish the truth of a legal principle asserted by a party.'" *Rainey*, 298 Or at 463 (quoting *State v. Kline*, 50 Or 426, 432, 93 P 237 (1907); *see also Black's Law Dictionary* 638 (9th ed 2009) ("Evidence that will establish a fact or sustain a judgment unless contradictory evidence is produced."). When used in that sense, *prima facie* evidence has been equated with a rebuttable presumption. *Rainey*, 298 Or at 463. If the "presumptive evidence" in ORS 166.450 were a rebuttable presumption, then defendant's argument might have some force because it would shift the burden to defendant and we would have to address the state's theories. However, the fact that the legislature in 1925 specifically used both "*prima facie*" and "presumptive evidence" in different sections of the bill suggests that the legislature meant those terms to have different meanings. *Atkinson v. Board of Parole*, 341 Or 382, 388, 143 P3d 538 (2006) ("[W]hen the legislature uses different terms within the same statute, normally it intends those terms to have different meanings."). And, in fact, there is another meaning of the term "presumptive evidence." *Black's Law Dictionary* provides an alternative (albeit archaic) definition for presumptive evidence, which is "[c]ircumstantial evidence as distinct from testimonial evidence." *Black's Law Dictionary* at 638. Under that

definition, "presumptive evidence" can be understood to refer to a particular category of evidence that is distinct from both testimonial evidence and direct evidence. *See Hielscher v. State*, 511 SW2d 305, 307 (Tex Crim App 1974) (explaining that "[p]roof of the unexplained possession of recently stolen property * * * is presumptive evidence of guilt, as distinguished from positive or direct evidence [of the theft]"). As with all evidence, a trier of fact may, but is not required to, rely upon presumptive evidence, along with other evidence, to infer guilt or a material element. *Id.* at 308. Critically for our purposes, when used in that sense, presumptive evidence "is *not* a presumption or conclusion of law * * * and does *not* shift the burden of proof from the state to the defendant." *Id.* at 307 (emphasis added). With that understanding, in other words, the second sentence of ORS 166.450 does not create a presumption at all; it merely states that a factfinder may, but need not, consider a defendant's possession of the firearm as evidence that he is the person who obliterated the number. The evidence does not compel that conclusion nor does it necessarily provide enough evidence to establish the state's *prima facie* case and shift the burden of disproof to defendant. The factfinder is free to reject the inference, as factfinders always are.

This court has, in fact, construed the term "presumptive evidence" as having that effect. In *State v. Nossaman*, 63 Or App 789, 666 P2d 1351 (1983), *abrogated on other grounds, Benson v. Youngblutt*, 141 Or App 458, 919 P2d 496 (1996), the defendant was charged with unlawful possession of a dangerous weapon under ORS 166.220 (1981), which provided, in part:

"(1) Any person * * * who with intent to use the same unlawfully against another, carries or possess a * * * loaded pistol, revolver or other firearm * * * commits a Class C felony.

"(2) The carrying or possession of any of the weapons specified in subsection (1) of this section by any person while committing, or attempting or threatening to commit a felony or a breach of the peace or any act of violence against the person or property of another is presumptive

evidence of carrying such weapon with intent to use the same in violation of subsection (1) of this section."[3]

The court instructed the jury,

"And the carrying or possession of a dangerous weapon as that term has been defined to you, while attempting to commit, committing, or threatening to commit a felony, * * * is sufficient evidence unless equaled or outweighed by other evidence of carrying such a dangerous weapon with the intent to use it unlawfully against another person."

*Nossaman*, 63 Or App at 796. We disapproved the instruction,

"because it does not make clear to the jury that finding the presumed fact is merely an inference that it is permitted to draw. Instead, it could give the jury the impression that, in the absence of evidence from the defendant, an element of the charge is to be presumed from proof of different facts, a violation of OEC 309(1)."

*Id.*[4]

Finally, we construe ORS 166.450 as we do because construing it as the parties do would raise constitutional questions. If "presumptive evidence" were, in fact, a rebuttable presumption that was sufficient to establish a *prima facie* case, then the second sentence of ORS 166.450 would raise constitutional problems, in that it could be interpreted as shifting the burden of proof to the defendant. "It is axiomatic that we should construe and interpret statutes 'in such a manner as to avoid any serious constitutional problems.'" *Bernstein Bros. v. Dept. of Rev.*, 294 Or 614, 621, 661 P2d 537 (1983) (quoting *Easton v. Hurita*, 290 Or 689, 694, 625 P2d 1290 (1981)). Indeed, "[w]hen confronted with competing, reasonable constructions of a statute, and there is even a tenable argument that one of them would render the statute unconstitutional, we generally favor the other construction." *Pete's Mountain Homeowners v. Ore. Water Resources.*, 236 Or App 507, 522, 238 P3d 395 (2010). In sum, we construe the second sentence of ORS 166.450 as permitting a factfinder

---

[3] Subsection (2) has subsequently been repealed. Or Laws 1985, ch 543, § 1.

[4] The court did refer to "presumptive evidence" as a "presumption," but, that label notwithstanding, treated it as a matter of evidence.

to consider a defendant's possession of a firearm with obliterated identification as evidence that the defendant was the obliterator. From the record below, it is evident that the trial court denied defendant's motion for a judgment of acquittal based on a misunderstanding of the statute.

Our inquiry, however, does not end there. That is so because a defendant is entitled to an outright reversal only when the facts themselves are so lacking that a rational finder of fact could not find the defendant guilty beyond a reasonable doubt. *State v. Dixon*, 191 Or App 503, 508 n 1, 83 P3d 385 (2004). Thus, even if we determine that the trial court convicted defendant without considering material elements of the crime, as we have done here, defendant is not entitled to acquittal unless the state's evidence was legally insufficient.

Therefore, we must now consider whether the record would allow a rational finder of fact to find all of the elements, including the ones that we have determined constitute the offense in ORS 166.450, including the events that the court did not consider. The elements of ORS 166.450 are: (1) The defendant obliterated the numbers on a firearm, (2) did so intentionally, and (3) for an unlawful purpose. Defendant's possession of the firearm may be considered, along with other evidence, to establish the first element. As defendant correctly points out, there is no direct evidence that he intentionally obliterated the identification number on his pistol. We also note that the record contains no direct evidence that the obliteration was done for an unlawful purpose. A lack of direct evidence, however, does not entitle a defendant to a judgment of acquittal. As the statute itself provides, inferences drawn from the attendant circumstances of a crime can be sufficient for a rational trier of fact to find a defendant guilty beyond a reasonable doubt. Here, there is evidence that defendant was in possession of the pistol in question. Defendant admitted that he purchased the gun and had it in his vehicle. *See State v. Miller*, 238 Or 411, 413-14, 395 P2d 159 (1964) (holding that a driver's knowledge that there are "concealable weapons in the car, available for the driver's use, is evidence of possession").

Furthermore, defendant's intent to obliterate the identification numbers can be inferred from the physical condition of the firearm itself. Turner testified that, based on his training and experience, the identification number on the pistol had been intentionally scratched off. This testimony is unrefuted. Defendant offers no alternative explanation for how the identification number came to be removed, and we can imagine none. Finally, there was evidence that the obliteration was done for an unlawful purpose. Turner testified that, in his experience, firearm identification numbers are almost always obliterated in order to conceal the fact that they have been stolen. *See* ORS 164.095 (a person commits theft by receiving when a person "conceals * * * property of another knowing or having good reason to know that the property was the subject of theft"); *see also State v. Doster*, 247 Or 336, 341, 427 P2d 413 (1967) (holding that, for purposes of the crime of theft by receiving, the term conceal "includes any acts or conduct which assists the thief in converting the property to his own use, or which may prevent or render more difficult its discovery by the owner" (quoting *Receiving Stolen Property*, 45 Am Jur 386 § 3 (1943)). We also note defendant's shifting explanations for how he came to possess the firearm in question. A reasonable trier of fact could have concluded that defendant neither found nor purchased the pistol, but that he stole it. From this evidence, a rational trier of fact could determine, beyond a reasonable doubt, that the identification number on the pistol had been obliterated, and that it had been its owner, defendant, who had obliterated it for an unlawful purpose. Therefore, defendant was not entitled to a judgment of acquittal and is not entitled to have his conviction reversed outright.

Thus, in addition to our conclusion that the trial court did not consider material elements of the crime (intent, unlawful purpose), we also determine that the trial court record was sufficient to withstand a motion for judgment of acquittal. Therefore, we reverse and remand the conviction. *State v. Andrews*, 174 Or App at 354, 366, 27 P3d 137 (2001).

The outcome of that retrial, however—if the state chooses to have one—is almost certainly foreordained. That is so because, as we explain below, the gun on which both

the obliteration and possession charges were founded should have been suppressed. When, having all of the information he needed to cite defendant, Turner chose instead to further question defendant about matters that had no bearing on the traffic stop, Turner did not have reasonable suspicion of criminal activity. Everything that occurred after that point, including follow-up questions about contraband, observations that Turner believed indicated nervousness, the drug dog investigation, and the search that disclosed the gun, should have been suppressed.

We begin by briefly reciting the facts relevant to defendant's motion to suppress, which we state consistently with the trial court's ruling. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993) ("A trial court's findings of historical fact are binding on appellate courts if there is constitutionally sufficient evidence in the record to support those findings."). As previously described, defendant was pulled over during a traffic stop by Patrol Sergeant Turner; the facts relevant to the motion to suppress concern the circumstances of that stop. After spotting defendant's vehicle, Turner pulled onto the highway and drove his cruiser directly behind defendant's van. Defendant reduced his speed so that he was traveling 20 miles below the speed limit. Turner then stopped defendant's vehicle.

As Turner approached the vehicle, defendant rolled down the passenger side window. A strong odor of cologne emanated from the vehicle. Turner observed two bottles of body spray on the front passenger seat and numerous air fresheners scattered throughout the vehicle. Lying next to the body spray were a cell phone and a pager. An open energy drink was sitting in the center console. Turner also noticed "religious symbols" in the vehicle.

When asked, defendant provided Turner with his license and registration. Turner observed that defendant was from Washington but driving a van with Oregon license plates. The van was not registered to defendant. Turner asked defendant where he was traveling, and defendant replied that he was going to Pendleton to pay his cousin's taxes. Turner then returned to his patrol car where he ran license and warrants checks. These checks revealed that

defendant had no outstanding warrants, that defendant's license was valid, and that no one had reported the vehicle as stolen. Nevertheless, Turner remained suspicious that defendant was involved in some illegal activity so he called in a request to have Senior Trooper Chichester come to his location with a drug detecting dog.

Turner returned to defendant's vehicle and noticed that defendant had moved the pager from the front seat to the glove box and was holding his cell phone in his right hand, looking at it repeatedly. Turner asked defendant if he had any controlled substances in the vehicle. Defendant became nervous, and his cheek began to twitch. He told Turner that he did not want his vehicle searched because it did not belong to him. Approximately 10 minutes after Turner made the request for a drug detecting dog, Chichester arrived at the scene. Chichester brought the dog up to the vehicle and it alerted—erroneously, as it turned out—to the presence of controlled substances. The officers then searched the vehicle and discovered ammunition and the pistol with the obliterated identification number.

On appeal, defendant argues that the evidence discovered during that search should have been suppressed, because Turner extended the stop without reasonable suspicion, thereby violating defendant's rights under Article I, section 9, of the Oregon Constitution. The state responds that reasonable suspicion supported the extension of the stop, but also argues, as a preliminary matter, that defendant failed to preserve his argument for appeal. Accordingly, we begin with the question of preservation.

In order to preserve an error for appellate review, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). In this case, the state's preservation argument is based on defendant's comments at the suppression hearing. At that hearing, defendant stated that an officer's "gut feelings" or "suspicion" is not a sufficient basis to extend a traffic stop. The court then asked, "But aren't reasonable

suspicions enough to inquire under the statute?" Defendant replied:

> "They could be enough to inquire, but not to extend the stop. [The officer has] to be able to articulate some basis to give him *probable cause* to extend the stop. He has everything he needs * * * to give him the ticket * * *. If he wants to expand [the stop] beyond that, he has to articulate something besides a suspicion."

(Emphasis added.) The following exchange then occurred:

> "THE COURT:   Doesn't the statute say that he can expand it and ask other questions if he has reasonable suspicion?
>
> "[Defendant]:   But the questions go nowhere. He doesn't gain any additional information. * * *
>
> "* * * In this case, [defendant] denies the consent, and at that point the officer needs to give him a ticket or articulate to a court that his eyes were red. I smelled marijuana. There was an empty whiskey bottle in the back. There was a text message that said, 'The controlled substances are on the way. I'm being delayed.' Something that you articulate besides factors that you could lay out for any traveling."

Setting aside defendant's invocation of a "probable cause" standard, defendant raised at trial the same argument that he now advances on appeal—that the state had not been able "to articulate some basis" to justify Turner's decision to "extend the stop." While making his arguments in court, defendant appears to have been applying the test for reasonable suspicion rather than the test for probable cause. Reasonable suspicion exists when an "officer can point to specific and articulable facts that gave rise to the officer's suspicion that the individual committed a crime." *State v. Nguyen*, 176 Or App 258, 262, 31 P3d 489 (2001). In contrast, the test for probable cause is whether the officer (1) "subjectively believe[d] that a crime has been committed" and (2) the officer's belief was "objectively reasonable in the circumstances." *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009). Indeed, defendant's memorandum in support of his motion to suppress correctly identifies reasonable suspicion as the relevant standard. Moreover, defendant closed his arguments at trial by telling the court that

he did not "believe the officer's suspicions were reasonable suspicions, even taken as a whole." More importantly, despite defendant's reference to probable cause, both the trial judge and the state thoroughly addressed the issue of whether the officer had reasonable suspicion. At the suppression hearing, the state presented the court with that argument. While so arguing, the state described the specific circumstances that the state believed gave rise to that suspicion. In fact, the list of factors that the state emphasized to the trial court is nearly identical to the list of factors to which the state now draws our attention. After the state's arguments, the court concluded that Turner had reasonable suspicion to justify further delay and questioning of defendant. In light of these circumstances, the state's assertion that the claim of error is unpreserved because, at one point in the heat of argument, defense counsel said "probable cause" instead of "reasonable suspicion," is obviously unsupportable.

We therefore turn to the merits. Officers may "stop and briefly detain motorists for investigation of noncriminal traffic violations." *State v. Rodgers/Kirkeby*, 347 Or 610, 624, 227 P3d 695 (2010) (emphasis omitted). However, "[p]olice authority to detain a motorist dissipates when the investigation reasonably related to that traffic infraction, the identification of persons, and the issuance of a citation (if any) is completed or reasonably should be completed." *Id.* at 623. When police have all of the information necessary to complete their investigation into the traffic infraction, but instead of citing the driver or ending the encounter, they choose instead to launch an investigation into a matter that is unrelated to the infraction, they have unlawfully extended the stop. Police must provide some other justification for continuing a traffic stop beyond that point. *Id.* at 624 n 4 (rejecting the argument that a *de minimis* delay while processing a traffic violation does not violate Or Const, Art I, § 9).

In this case, the state argues that defendant's continued detention was justified because Turner reasonably (but erroneously) suspected defendant was involved in drug trafficking. An officer's reasonable suspicion that an individual has committed a crime permits that officer to

temporarily stop that individual and make investigatory inquiries. *Nguyen*, 176 Or App at 262. Whether a suspicion is reasonable depends on the totality of the circumstances and requires an officer to "point to specific and articulable facts that gave rise to the officer's suspicion that the individual committed a crime." *Id.*

The state argues that the following facts support a reasonable suspicion that defendant was involved in drug trafficking: (1) defendant slowed his vehicle after spotting Officer Turner; (2) defendant was traveling interstate in a car owned by someone else; (3) defendant explained to Turner that he was on his way to Pendleton to pay his cousin's taxes; (4) defendant's vehicle contained numerous air fresheners, two bottles of cologne, and smelled strongly of both; (5) defendant had "religious symbols" in his vehicle; (6) defendant had an open energy drink; (7) defendant was traveling with both a cell phone and a pager; (8) during his conversation with Turner, defendant looked down at his cell phone; (9) defendant moved the pager to his glove box; (10) defendant became nervous when asked about the presence of drugs. We consider these facts individually before determining whether taken together they support a reasonable suspicion that defendant had committed a crime.

As an initial matter, we conclude that defendant's looking at his cell phone, moving the pager to the glove box, and nervous response when asked about drugs could not figure in the reasonable suspicion calculus, even if they were suspicious—which they are not. Whether an officer has reasonable suspicion is determined as of the time that the stop becomes unlawfully extended; here, that occurred when the officer, having determined that defendant's license was valid, his vehicle was not stolen, and he had no warrants, chose to pursue a criminal investigation instead of citing defendant. The circumstances mentioned above occurred after that point. We also conclude preliminarily that defendant's consumption of an energy drink or the fact that he slowed his vehicle after speeding add nothing to the reasonable suspicion calculus. Likewise, the reason defendant gave for his travel—going to Pendleton to pay his cousin's taxes— may be unusual, but it does not suggest criminal activity;

Pendleton is a county seat, and people pay taxes there. The state offers no explanation of the connection, if any, between these facts and the crime of drug trafficking. *See State v. Maciel*, 254 Or App 530, 541, 295 P3d 145 (2013) (finding no connection between defendant's "bizarre story" and the crime of drug trafficking). We also decline to consider the fact that defendant had religious symbols in his vehicle. The officer's explanation—that people carrying drugs have religious symbols in order to falsely create the impression that they are good people—simply holds no water. Further, the fact that defendant was driving a van with out-of-state plates is of no significance, in that the plates were from Washington and defendant was driving on I-84 just across the Columbia River from that state.

We also conclude that defendant's anxious behaviors contribute very little to our reasonable suspicion calculus. We have held that "there is nothing inherently suspicious about * * * being nervous when pulled over by a police officer." *State v. Berry*, 232 Or App 612, 618, 222 P3d 758 (2009), *rev dismissed*, 348 Or 71 (2010). Moreover, there is nothing in the record before us that would lead us to conclude that defendant's nervousness was uniquely suspicious.

This leaves three facts for us to consider: (1) the car defendant was driving was owned by somebody else; (2) defendant was carrying a cell phone and a pager; and (3) the car contained multiple air fresheners and two bottles of cologne. The state argues that these facts are consistent with the transportation of narcotics. That may be true. However, a set of facts will not always create a reasonable suspicion just because those facts are consistent with, but do not necessarily suggest, a crime being committed. Wearing clothing while driving, to use an extreme example, is also consistent with the transportation of narcotics. Less extremely, so too (for all we know) is wearing cologne. This consistency, however, would not be enough to support reasonable suspicion. *See Maciel*, 254 Or at 539 (holding that notwithstanding officer's testimony that people engaged in criminal enterprises often use prepaid cellular phones, the presence of two prepaid cellular phones carried little weight because such phones can be easily lawfully acquired

by criminals and noncriminals alike). Moreover, there are several traffic stop cases where we considered those same factors and determined that officers lacked reasonable suspicion. *See State v. Juarez-Godinez*, 135 Or App 591, 900 P2d 1044 (1995), *aff'd on other grounds*, 326 Or 1, 942 P2d 772 (1997) (holding that facts, including (1) a vehicle with a heavy odor of air freshener; (2) third-party registration of the vehicle; and (3) nervous occupants with salon-styled hair, gold jewelry and new clothes were insufficient to establish reasonable suspicion of a drug offense). *See also State v. Meza-Garcia*, 256 Or App 798, 303 P3d 975 (2013) (holding that factors, including (1) a vehicle traveling interstate; (2) the presence of two cell phones; (3) the strong odor of air freshener; (4) the defendant's nervousness; and (5) third-party registration of the vehicle were insufficient to establish reasonable suspicion).

During the hearing on the motion to suppress, Turner did not explain why he found it suspicious for defendant to be traveling in a car owned by a third party. He did, however, testify that the smell of cologne and air freshener was significant because "oftentimes people who are transporting contraband, controlled substances, or unlawful items in their vehicle, they use these things as a cover scent, so that it masks the odor of anything that's illegal in their car that could be emitting an odor." With respect to the cell phone and pager, he explained:

> "[I]t is again something that's seemingly normal. Oftentimes people will have one cell phone or two cell phones, but when you're carrying both of them it—it says to me that boy, this person really needs to get contacted. So unless one is for work and one is for business, it's really odd that somebody would have two modes of communication to be contacted."

However, the record does not provide details about any particular training or experience that might help explain how Turner knows that carrying both a cell phone and a pager and using cover scents are tactics that drug traffickers "oftentimes" employ. It is, of course, fairly intuitive that cell phones, pagers, and cover scents might be used by drug traffickers. Accordingly, we would afford these factors

some minimal amount of weight under the totality of the circumstances even without the invocation of an officer's training and experience.

We do not, however, find that Turner's bare assertion of "training and experience" adds any additional weight to these factors. An officer's training and experience are relevant to, and may help explain why, a particular circumstance is suspicious. *State v. Jacobs*, 187 Or App 330, 333, 67 P3d 408 (2003). We have also recognized, however, that "[t]he phrase 'training and experience' * * * is not a magical incantation with the power to imbue speculation, stereotype, or pseudoscience with an impenetrable armor of veracity." *State v. Daniels*, 234 Or App 533, 541, 228 P3d 695 (2010). As relevant here, the invocation of training and experience, without more elaboration describing what that training and experience consists of, does little to prove that otherwise innocuous facts—carrying a cell phone and a pager, wearing cologne, and having air fresheners—are evidence of criminal activity. *Id.* at 541-42; *See also State v. Morgan*, 230 Or App 395, 215 P3d 120 (2009) (reasoning that the officer's testimony about direct, relevant experience with the suspected crime should be afforded more weight than a general invocation of training and experience).

We find that, taken together, the facts cited by the state are not a sufficient basis to conclude that Turner had reasonable suspicion to detain defendant until the drug dog arrived. As soon as police were able to issue defendant a citation, their authority to detain defendant evaporated. The extension of the traffic stop, therefore, violated defendant's rights under Article I, section 9. Because there is no dispute that the evidence defendant sought to suppress was discovered as a result of that extension, we find the trial court erred in denying defendant's motion to suppress.

In sum, we conclude that, when rejecting defendant's motion for a judgment of acquittal and subsequently convicting him of intentionally obliterating the identification number on a firearm for an unlawful purpose, the trial court failed to consider whether defendant intentionally committed the alleged act and whether the alleged act was done for an unlawful purpose. For that reason, we reverse. However,

there was sufficient evidence from which a rationaltrier of fact could have found those elements beyond a reasonable doubt. For that reason, we remand. We also conclude that police did not have reasonable suspicion to extend the traffic stop, so, on remand, all evidence discovered as a result of the unlawful extension, including the firearm, must be suppressed. We therefore reverse the trial court's denial of defendant's motion to suppress, reverse defendant's conviction under ORS 166.450, and remand.

Reversed and remanded.